**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| CHEREASE KINCAID, AS ADMINISTRATOR FOR THE ESTATE OF RAYMOND GORDON, Deceased, : : : : : : | |
| Plaintiff, : : | |
| v. : : | Case No. 5:08-CV-348 (HL) |
| AUTUMN VILLAGE 2 ASSISTED LIVING FACILITY LIMITED LIABILITY COMPANY, : : : : : | |
| Defendant. : | |

## ORDER

This matter is before the Court on the Defendant's Motions to Strike Plaintiff's Affidavit and to Disregard References, Argument and Statements Related to Nursing Homes, Standards of Care, and Medications in Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 49) (the "Motion"). For the following reasons the Motion is granted in part and denied in part.

### I. FACTUAL BACKGROUND

This case involves a slip and fall injury sustained by Raymond Gordon at the Autumn Village 2 Assisted Living Facility (the "Facility") on July 22, 2008. Unfortunately, on January 3, 2009, Mr. Gordon passed away for reasons unrelated to his fall at the Facility. On October 7, 2009,

this Court entered an Order (Doc. 45) substituting Cherease Kincaid as Plaintiff.

The Defendant filed its Motion for Summary Judgment (Doc. 40) on September 16, 2009.  The Plaintiff filed her Response to the Motion for Summary Judgment (the "Response") (Doc. 48) on September 29, 2009.  Upon receiving this Response and the documents attached thereto, specifically the Affidavit of Cherease Kincaid (the "Affidavit") (Doc. 48-6) and the Plaintiff's Statement of Material Facts Which Present a Genuine Issue for Trial (the "Statement of Disputed Facts") (Doc. 48-16), the Plaintiff filed this Motion for the reasons set out below.

## II.   DISCUSSION

**A.   Motion to Strike Paragraphs of the Affidavit**

The Defendant first asks this Court to strike certain statements Plaintiff makes in her Affidavit and references to those statements in the Plaintiff's Response.  This request is granted in part and denied in part.

*1.   Paragraphs 6, 7, 8, 9 and 11*

The Defendant challenges paragraphs 6, 7, 8, 9 and 11 of the Affidavit on two grounds: first, because the Plaintiff relies on information in her Affidavit that she failed to disclose during the course of discovery; and second, because the statements are inadmissible hearsay.  Because the Court agrees with the Defendant's first argument, it is unnecessary to address the hearsay issue as to these paragraphs.

Federal Rule of Civil Procedure 37(c)(1) states, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 26(e)(1) requires that

> [a] party who . . . has responded to an interrogatory . . . must supplement or correct its disclosure or responses . . . in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or . . . as ordered by the court.

Therefore, according to these Rules, the Plaintiff may not use as evidence information she did not adequately disclose in discovery unless she can show that the failure to disclose was substantially justified or was harmless.

During the course of discovery, the Defendant sent the Plaintiff the following interrogatories:

> <u>Interrogatory 14</u>:  State whether you have had any conversations or other communications with Defendant or its agents, employees or former employees at the time of or following this occurrence(s) and if so, state the nature of the communication and the statements, if any, that were made by you and by Defendant and/or Defendant's agents, employees or former employees.
>
> <u>Interrogatory 15</u>:  Identify by name any current or former employee(s) of Defendant with whom you have discussed the issues forming the Event, or the basis of This Action and/or allegations contained in the Complaint.  Please specify the date, time and substance of these discussions.

3

The Plaintiff responded to Interrogatory 14 as follows:

> The Incident/Accident Report . . . indicates that someone, apparently "Dianna Wise" called Plaintiff's daughter, reported the incident, and told his daughter that the Plaintiff had been sent to Spaulding Regional Hospital . . . Beyond this, no additional information is known concerning contacts with current or former employees or agents of the Defendant.

The Plaintiff responded to Interrogatory 15 as follows: "See Response to Interrogatory No. 14."

Nevertheless, at summary judgment, the Affidavit that the Plaintiff swore out and upon which she relies avers as follows:

> 4. On the morning of July 22, 2008, I received a call from a housekeeper at Autumn Village, where my dad was a resident.[1]
>
> 5. The housekeeper's name was Dianna Wise. I had seen her before, and can recognize her on sight.
>
> 6. Ms. Wise was extremely distraught and agitated. She told me "Mr. Gordon fell. I am so sorry, I am so sorry."
>
> 7. I asked her what had happened.
>
> 8. She told me that she had gone into his room to clean the bathroom area. She told me she stepped out of the room without putting up a warning sign or pulling the garbage out as an indication that the floor was wet.
>
> 9. It was clear to me from our conversation that Ms. Wise considered the fall to be entirely her fault. She was so distressed that I actually felt sorry for her.
>
>    . . .

---

[1] The Defendant does not argue that paragraphs 4 and 5 should be struck, but the Court includes them here for context.

>   11.  A few days later, I called Pam Westmoreland, the nursing home administrator, furious. I vented to her about their carelessness in allowing my dad to fall. I told Ms. Westmoreland about the conversation I had with Ms. Wise. Ms. Westmoreland was very surprised at how much Ms. Wise had told me.

There is obviously a disparity between what the Plaintiff disclosed to the Defendant during discovery, and what the Plaintiff intends to argue at summary judgment, but should this disparity result in this Court disallowing the use of this information at summary judgment?

This Court must rule in the affirmative and disallow the use of the information in paragraphs 6, 7, 8, 9 and 11 as evidence at summary judgment. The information in these paragraphs goes well beyond the Plaintiff's responses to the interrogatories. The Plaintiff, in her interrogatory response, was not forthcoming with any information, but instead referred to and relied on statements included in the Accident Report. But at summary judgment, the Plaintiff swears out an Affidavit purporting to provide details of conversation with Ms. Wise which Plaintiff had not previously revealed, and a conversation with Ms. Westmoreland which Plaintiff had never indicated even occurred.

The Plaintiff's reason for not disclosing this additional information upon which she now seeks to rely, that she believed that discovery was stayed, is not substantial justification. Whether or not discovery was stayed, the Plaintiff was under a duty to amend her interrogatory

5

responses. Nor can her failure to amend her responses be considered harmless as this information is directly contradictory to the evidence presented by the Defendant.

The Plaintiff's failure to amend her interrogatory responses results in the mandatory exclusion, under Rule 37(c)(1), of undisclosed information from consideration at summary judgment. Therefore, the Court grants the Motion by striking paragraphs 6, 7, 8, 9 and 11 of the Affidavit and all references to these paragraphs in the Plaintiff's Response.

2.  *Paragraph 10*

The Defendant next asks this Court to strike paragraph 10 of the Affidavit as inadmissible hearsay. In paragraph 10, the Plaintiff states, "Before my dad died, he told me that no one had told him the floor was wet." This statement, which is offered to prove the truth of the matter asserted, i.e., that no one told Mr. Gordon the floor was wet, is undoubtedly hearsay. However, the Plaintiff argues that this statement is nevertheless admissible under the residual exception to hearsay.[2]

Federal Rule of Evidence 807 permits as evidence statements that are hearsay to which no other hearsay exception applies, but which have "circumstantial guarantees of trustworthiness" equivalent to the other

---

[2] The residual exception, found in Federal Rule of Evidence 807, applies only if no other hearsay exception applies. Because the Plaintiff only argues for the residual exception, this Court does not need to address the other hearsay exceptions.

hearsay exceptions.  The Plaintiff argues that Mr. Gordon's statement had equivalent guarantees of trustworthiness because, in a situation similar to that in Fossyl v. Milligan, 317 Fed. Appx. 467 (6th Cir. 2009), Mr. Gordon made his statement while facing death.

    For the purposes of this section, the Court will assume that the Plaintiff has shown that Mr. Gordon made his statement while aware of his impending death.  Even with this assumption, however, Mr. Gordon's statement does not have equivalent circumstantial guarantees of trustworthiness.  The Plaintiff is correct that in Fossyl the Sixth Circuit Court of Appeals did hold that a statement made by a terminally ill witness facing death had guarantees of trustworthiness.  However, the critical distinction is that in Fossyl the deceased declarant did not have any stake in the outcome of the litigation.  In this case, though, the statement the Plaintiff seeks to introduce was made by Mr. Gordon at a time when he was the plaintiff in this case.  Moreover, the statement he allegedly made went to the ultimate issue in the case, i.e., whether he was aware of the wet floor.  In such a situation, there can be no circumstantial guarantees of trustworthiness equivalent to those of other hearsay exceptions.

    Furthermore, the above analysis hinges on the assumption that Mr. Gordon made his statement while facing death.  Remove this assumption and paragraph 10 has even fewer guarantees of trustworthiness.  While the statement in Fossyl was made by a terminally ill witness facing death,

here, the Plaintiff only states that Mr. Gordon made his statement "[b]efore [he] died." The affidavit does not indicate whether, as in Fossyl, Mr. Gordon was fatally ill, was aware of or facing impending death, or anything else. Thus, the only real comparison between this case and Fossyl is that at some point the declarant in each case died. As unfortunate as that is, the bare fact in this case of death following a statement, without more, is insufficient to provide any guarantees of trustworthiness.

For these reasons, paragraph 10 of the Affidavit is inadmissible hearsay and is not entitled to the residual exception. As such, it will be struck from the Affidavit and all references to this statement in the Plaintiff's Response will also be struck.

## B.  Motion to Strike Nursing Home References and Related Standard of Care Arguments

The Defendant next asks this Court to strike the Plaintiff's use of the term "nursing home." The Defendant argues that there is a legal distinction between a nursing home and an assisted living facility, the latter being what the Defendant claims the Facility is. According to the Defendant, the importance of this distinction is that a nursing home and an assisted living facility are subject to different standards of care under the law. While the Defendant may have a (technical) point, this Court does not agree that this merits the striking of all uses of the term nursing home in this case.

First, while there may be a legal distinction between nursing homes and assisted living facilities, this distinction does not necessarily exist outside of the legal context.  Colloquially, the term nursing home is used to refer to a whole range of living facilities for the aged or infirm.  The Merriam-Webster Online Dictionary defines a nursing home as "a privately operated establishment providing maintenance and personal or nursing care for persons (as the aged or the chronically ill) who are unable to care for themselves properly."  MERRIAM-WEBSTER ONLINE DICTIONARY at www.merriam-webster.com/dictionary/nursing%20home.  Thus, the function of the Facility closely tracks the non-legal definition of nursing home.  Therefore, there does not appear to be a reason to strike references to nursing homes simply because there also exists a legal term of art with a more specific definition unless the use of the term would lead to confusion or to a legally incorrect result.

In this case, the use of the term nursing home would have such an effect.  First, the Plaintiff has shown that she does not use the term nursing home in its legal context, but in its colloquial context.  Second, the Plaintiff has shown that the terms nursing home and assisted living facility have been used interchangeably throughout the litigation and the Defendant has yet to complain of such use.  Finally, while a nursing home may be subject to a higher standard of care than an assisted living facility, the Plaintiff makes it clear that any argument she makes regarding a heightened

9

standard of care is based not on the classification of the Facility, but on the agreement between Mr. Gordon and the Defendant.

For these reasons, the Defendant's request that the Court strike the Plaintiff's use of the term nursing home is denied.

## C.     Motion to Strike Medication References and Argument

The Defendant next asks this court to strike from the Plaintiff's Response arguments related to Mr. Gordon's medications.  In her Response, the Plaintiff shows that at the time of the accident Mr. Gordon had been prescribed and was taking fifteen medications—including Lyrica, Effexor, Theophylline, Nexium, Misoprostol, Diciofenec, Lasix, Singulair, Actos and Lortab.  At trial, the Plaintiff intends to introduce evidence through medical testimony that these medications can have adverse affects on the user's concentration and awareness.  The purpose of this evidence, according to the Plaintiff, is to show that, due to Mr. Gordon's use of these medications, Mr. Gordon may not have had equal knowledge of the wet floor.  This is directly in issue because the Defendant has argued that Mr. Gordon had equal knowledge of the hazard.

Such use of the medications evidence is reasonable, and the Defendant has not shown otherwise.  Therefore, the Defendant's request that this Court strike the references to and arguments regarding medication in the Plaintiff's brief Motion is denied.

**D.     Motion to Strike Parts of the Plaintiff's Statement of Disputed Facts**

The Defendant last argues that certain statements contained in the Plaintiff's Statement of Disputed Facts should be struck. The Court addresses each particular argument below.

*1.     Statement number 6*

The Defendant states that statement number 6 should be struck because it is "blatantly false." Whether or not a fact is blatantly false is not for the Court to determine at this stage. The Defendant has not shown that there is a legitimate reason to strike this statement, so the request is denied.

*2.     Statements number 3, 4, 5, 9 and 10*

Statements number 3,4,5 and 10 all involve statements allegedly made by Defendant's employees to the Plaintiff. These alleged statements are the same ones the Court addressed and disallowed pursuant to Rule 37(c)(1) *supra*. Additionally, statement 9 involves a statement allegedly made by Mr. Gordon to the Plaintiff before he died. This statement, too, has already been disallowed *supra* as inadmissible hearsay. Thus, the request to strike these statements is granted.

*3.     Statements number 7, 8, 11, 12, 13, 14 and 15*

11

The Defendant asks this Court to strike statements 7, 8, 11, 12, 13, 14 and 15 as irrelevant. Again, whether or not these statements are relevant is not for the Court to determine at this stage, so this request is denied.

4.     *Statements 16 and 17*

Finally, the Defendant asks this Court to strike statements 16 and 17 because they "are based upon the false premise that . . . Defendant is a nursing home." In these statements, the Plaintiffs allege that the Defendant owed a higher standard of care to Mr. Gordon. As noted above, the Plaintiff is alleging that this heightened standard of care arose from an agreement with the Defendant, not based on the premise that the Defendant is a nursing home. Therefore, the Court denies this request.

### III.     CONCLUSION

For the foregoing reasons, the Court rules as follows on the Motion (Doc. 49):

a.     the Defendant's request that this Court strike paragraphs 6, 7, 8, 9, 10 and 11, and all references to these paragraphs in the Plaintiff's Response, is granted;

b.     the Defendant's request that this Court strike the Plaintiff's use of the term "nursing home" is denied;

12

c.	the Defendant's request that this Court strike the Plaintiff's arguments relating to Mr. Gordon's medications is denied;

d.	the Defendant's request that the Court strike statements 6, 7, 8, 11, 12, 13, 14,15, 16 and 17 of the Plaintiff's Statement of Disputed Facts (Doc. 48-16) is denied;

e.	and the Defendant's request that the Court strike statements 3, 4, 5, 9 and 10 of the Plaintiff's Statement of Disputed Facts (Doc. 48-16) is granted.

**SO ORDERED**, this the 19th day of April, 2010.

*s/ Hugh Lawson*
HUGH LAWSON, Senior Judge

jch